[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DEC 19, 2008
THOMAS K. KAHN
CLERK

_____

No. 08-10739
Non-Argument Calendar

_____

D. C. Docket No. 07-00236-CR-4

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RAYMOND J. HORSFALL,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

(December 19, 2008)

Before CARNES,WILSON and FAY, Circuit Judges.

PER CURIAM:

Raymond J. Horsfall appeals the district court's 327-month sentence imposed after pleading guilty to one count of receiving child pornography, in violation of 18 U.S.C. § 2252A(a)(2). On appeal, Horsfall argues that: 1) the government breached the plea agreement by recommending an upward departure; 2) the court erred by imposing an upward departure under the Guidelines; and 3) the court violated Horsfall's Eighth Amendment rights by considering victim impact evidence at sentencing. For the reasons set out below, we affirm.

## I.

A federal grand jury returned a 12-count indictment against Horsfall, charging him with possession of electronic videos containing child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B) (Count 1), and receipt of 11 electronic videos containing child pornography, in violation of 18 U.S.C. § 2252A(a)(2) (Counts 2-12).

Pursuant to a written plea agreement, Horsfall pled guilty to Count Two of the indictment and the government agreed to dismiss the remaining counts. The plea agreement contained the following provisions pertinent to this appeal:

> The government agrees not to recommend to the Court that the Defendant, Raymond Horsfall, be given an upward departure under the Advisory Federal Sentencing Guidelines.
>
> The government reserves the right to inform the Court and the U.S. Probation Office of all facts pertinent to the sentencing process,

including all relevant information concerning the defendant and his background.

At the plea hearing, the government called Special Agent Joshua W. Hayes with the Federal Bureau of Investigation ("FBI"), who testified that, on July 21, 2007, a Savannah police officer responded to a report that an individual was viewing child pornography on a laptop computer in a coffee house. That individual, Horsfall, admitted to the investigating officer that he was viewing child pornography on the computer. The officer subsequently seized the laptop and turned it over to federal authorities, who later discovered child pornography files on the computer, including the video file specified in Count Two of the indictment.

The probation officer prepared a pre-sentence investigation report ("PSI"). In setting out the offense conduct, the probation officer stated that, of the 90 videos found in Horsfall's possession, 7 were in excess of 5 minutes in length: "One video was seven minutes in length, one was nine minutes, one was thirteen minutes, one was fourteen minutes, one was eighteen minutes, one was twenty-eight minutes in length, and one was twenty-nine minutes in length." The probation officer determined that Horsfall was in possession of the equivalent of 6,310 images.

In calculating Horsfall's applicable guideline range, the probation officer first determined that Horsfall had a total offense level of 37. He then proceeded to

discuss Horsfall's criminal history. In 1987, Horsfall pled guilty to aggravated child molestation, for which he was sentenced to five years' imprisonment. The victim in that case was Horsfall's daughter, who was six years old at the time of the offense. Under U.S.S.G. § 4A1.2(e), however, the probation officer did not award Horsfall any criminal history points for this conviction. The probation officer also reported that, in 1998, Horsfall pled guilty to a federal child pornography offense for transmitting images over the Internet, for which he was sentenced to five years' imprisonment. Twenty days after Horsfall was released from custody for that offense, the district court revoked his supervised release after Horsfall viewed pornography on a public computer. The probation officer also noted that, during a sex offender treatment session, "Horsfall indicated that he would re-offend if given the opportunity." Horsfall was released from custody again in April 2005, just over two years before the commission of the instant offense. Horsfall received three criminal history points for the 1998 offense, giving him a criminal history category of II.

An offense level of 37 and a criminal history category of II gave Horsfall an applicable guideline range of 235 to 293 months' imprisonment. However, the probation officer noted that an upward departure might be warranted on the following two grounds:

4

According to Application Note 4(B)(ii) of U.S.S.G. § 2G2.2, "If the length of the recording is substantially more than 5 minutes, an upward departure may be warranted." Seven of the videos possessed by the defendant were between seven and twenty-nine minutes in length. Therefore, an upward departure may be warranted.

Pursuant to U.S.S.G. § 4A1.3, an upward departure may be warranted if the defendant's criminal history category significantly under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit further crimes.

After Horsfall objected to the above two paragraphs of the PSI suggesting that an upward departure might be appropriate, but before the probation officer responded to these objections, the government submitted a response. Significantly, the government's response was not filed in the district court. The government argued, inter alia, that it "intend[ed] to seek an upward departure" under § 2G2.2, comment. (n.4(B)(ii)) based on the length of the videos. Citing to the facts in the PSI, the government explained that there were several videos over 5 minutes, the longest of which was 28 minutes, and that 3 others were 13, 14, and 18 minutes long. In addition, the government asserted that "Horsfall's own conduct and admissions demonstrate he is likely to commit further crimes and that an upward departure [wa]s necessary in this case to prevent future harm." Citing again to the PSI, the government explained that Horsfall had already been convicted of a child pornography offense, had viewed child pornography 20 days after his release from custody in that case, had previously admitted that he would re-offend if given the

5

opportunity, and had been arrested again 2 years later for child pornography.

The probation officer then responded to Horsfall's objections and submitted a sentencing recommendation to the court. In the sentencing recommendation, and "[b]ased on the under-representation of the defendant's criminal history category, the likelihood that he will commit future crimes, the substantial length of the videos involved in his case, and the exceedingly large number of images possessed by the defendant," the probation officer recommended that the court upwardly depart to a sentence of 327 months' imprisonment.

Before sentencing, the government withdrew its response to Horsfall's objections to the PSI. The government acknowledged that the plea agreement prohibited it from seeking an upward departure and that its response had disputed Horsfall's assertions that such a departure was unwarranted. The government pointed out, however, that its response "was not filed with the Court." The government therefore withdrew the response and took "no issue with respect to whether an upward departure is warranted in this case, as consistent with the Plea Agreement." That same day, the government also filed, under seal, victim impact statements that it submitted for consideration at sentencing. The government explained that the National Center for Missing and Exploited Children ("NCMEC") had identified some of the children in the pornographic images

6

possessed by Horsfall and that some of these victims had provided victim impact statements.

At sentencing, defense counsel first informed the court that he had withdrawn all of his objections to the PSI. However, he objected to the government's submission of victim impact statements on the ground that the government was attempting to seek an upward departure, which was prohibited by the plea agreement. The government responded that it intended to present the victim impact statements in order "to provide the Court with all of the necessary characteristics of the defendant and the nature of the crime," not to argue for an upward departure. The government also explained that the victims had a statutory right to be heard, and the court should consider the testimony under 18 U.S.C. § 3553(a). The court stated that it would allow the government to present the evidence.

After Horsfall confirmed that he had reviewed the PSI and had no objections to it, the following exchange then occurred:

> THE COURT: All right. He objects to the upward departure.
>
> [DEFENSE COUNSEL]: Your Honor, those objections have since been withdrawn, even our objections to the upward departure.
>
> THE COURT: I don't understand. Why would you

7

|  |  |
|---|---|
|  | withdraw your objections to an upward departure? |
| [DEFENSE COUNSEL]: | Based upon Mr. Horsfall's request, Your Honor. |
| THE COURT: | Did you request to withdraw that, Mr. Horsfall? |
| DEFENDANT: | Yes, Your Honor. |
| THE COURT: | All right. So there are no objections now. |

The court then invited the government to present its victim impact evidence, and the government called Horfall's daughter, who testified that she was 27 years old and that Horsfall had sexually abused her for about 6 years during her early childhood. The abuse stopped when she told a teacher at school, which ultimately led to Horsfall's arrest and conviction. As a result of the abuse, she had attempted suicide a few times, her children were not permitted to go to sleep overs, parties, or even to the neighbor's house, she had seen at least five different therapists, and almost every night she woke up sweating and with her heart racing. With respect to child pornography in general, she explained that viewing child pornography created a marketplace for it and encouraged its production.

The government called Special Agent Hayes, who read brief portions from a few of the victim impact statements that had been submitted to the court. He read a

8

portion of a statement by a 17-year old victim who was sexually abused by her father when she was between 10 and 11 years old. She had recently discovered that her father had shared the images of the abuse with others and that she was part of the "most prolific series of child pornography in the world." She explained how that made her feel like she had been raped by each and every one of the viewers. Hayes also read a portion of a letter written by the mother of a child pornography victim, who explained that "[a]ll those who trade these images and thereby created the market for lured [sic] and violent depictions of children are participants in the exploitation of my daughter." The mother explained how she "watched [her] daughter transform from a bouyant [sic], cheerful child, full of energy and enthusiasm to an anxious and fretful shadow of her former self," as she worried about whether people she met had seen the images and had no way of knowing how many of the images were still out there.

After Horsfall personally addressed the court and apologized to his daughter, the government then stated:

> Your Honor, we would just like to urge the Court – we are bound by the plea agreement to not recommend an upward departure – but to sentence at the top of the guideline range, keeping in mind that this is the third time Mr. Horsfall has been before this Court [for] child pornography, keeping in mind that the large number of images and videos total 6,310 images, that is ten times the maximum contemplated by the guidelines.

9

Some of those videos were very long. There was a 28-minute one, a 29-minute one. He is a repeat offender. He has a history of sexual abuse. And we think the top guidelines range is appropriate, Your Honor.

We are bound not to seek an upward departure, but we would point out those facts.

The court stated that it had reviewed the PSI, listened to the parties' arguments and the victim impact testimony, and considered the factors in 18 U.S.C. § 3553(a). It sentenced Horsall to 327 months' imprisonment. The court explained that it was imposing an upward departure because: Horsfall's criminal history score, which did not include his 1987 sexual molestation conviction, significantly under-represented the serious of his actual criminal record and the likelihood that he would commit further crimes; it was rare for a person to break an addiction to child pornography and Horsfall had been involved in such activity for 20 years; and Horsfall possessed a massive amount of child pornography images and videos that exceeded five minutes in length. The court informed Horsfall that his failure to re-articulate the arguments already presented at the hearing would not constitute a waiver.

After Horsfall filed a <u>pro se</u> notice of appeal, we granted defense counsel's motion to withdraw on appeal and appointed Horsfall new appellate counsel. Horsfall's appellate counsel then filed a motion in the district court to supplement

10

the record on appeal in order to include the government's written response to Horsfall's objections to the PSI. Counsel noted that, while the government's subsequent withdrawal of that response was filed in the district court, the response itself was not filed in the district court. The district court granted the motion.

After Horsfall filed his appellate brief, the government moved the district court to supplement the record on appeal in order to include the original draft of the PSI and Horsfall's objections to the PSI. The government explained:

> In his appeal, Horsfall claims the Government breached the plea agreement by making certain statements to probation, which were then incorporated into the Final PSI and submitted to the district court for consideration at sentencing. . . . The Draft PSI, which is typically not a part of the record on appeal, shows probation recommended an upward departure without any input from the Government and before the Government ever made any statements to probation. Accordingly, any statements by the Government concerning an upward departure were not incorporated into the Final PSI or otherwise submitted to the district court.

The district court granted the government's motion.

## II.

### A. Plea Agreement

"Whether the government has breached a plea agreement is a question of law that this court reviews de novo." United States v. Mahique, 150 F.3d 1330, 1332 (11th Cir. 1998). "The government is bound by any material promises it makes to a defendant as part of a plea agreement that induces the defendant to plead guilty."

11

United States v. Taylor, 77 F.3d 368, 370 (11th Cir. 1996) (citing Santobello v. New York, 404 U.S. 257, 262, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971)). "Whether the government violated the agreement is judged according to the defendant's reasonable understanding at the time he entered his plea." United States v. Boatner, 966 F.2d 1575, 1578 (11th Cir. 1992).

**1. The Government's Written Response to Horsfall's PSI Objections**

Horsfall first argues that the government breached the plea agreement by arguing for an upward departure in its written response to Horsfall's objections to the PSI. In its written response, the government stated that it "intend[ed] to seek an upward departure" based on the length of the videos and that "an upward departure [wa]s necessary" in order to prevent Horsfall from committing further crimes.

These assertions would appear to conflict with the government's obligation in the plea agreement not to recommend an upward departure. However, the plea agreement in this case prohibited the government from recommending an upward departure "to the court." As Horsfall acknowledged when he sought to supplement the record on appeal, the government's response was never filed with the district court. Furthermore, the government withdrew the response before sentencing, and there is nothing in the sentencing transcript to indicate that the court ever received

12

or considered the government's response. Thus, while the government may have improperly recommended an upward departure in its response, this recommendation was not presented to the court.

Nonetheless, Horsfall contends that the government's recommendation was indirectly presented to the court because it was incorporated in the probation officer's sentencing recommendation. However, a review of the record suggests that the probation officer did not incorporate the government's response. First, the probation officer did not reference the government's response in the sentencing recommendation. Second, a comparison between the government's response and the sentencing recommendation does not support Horsfall's assertion, as the upward-departure analysis in the probation officer's sentencing recommendation is substantially different and more detailed than the government's response. Finally, the government's response merely adopted the probation officer's initial upward-departure analysis from the original PSI. Thus, to the extent that the probation officer incorporated any of the government's response, it was essentially incorporating its own initial upward-departure recommendation. Accordingly, there is no indication that the government's response was presented to the court and, therefore, there was no violation of the plea agreement in this regard.

**2. The Presentation of Victim Impact Evidence at Sentencing**

13

Horsfall next contends that the government breached its obligation not to recommend an upward departure by calling his daughter to testify and introducing the victim impact statements at sentencing. This victim impact evidence generally revealed the dramatic and long-lasting effects of sexual abuse and explained how viewing child pornography incentivized its production. However, the government's presentation of this evidence did not expressly violate its obligation not to recommend an upward departure, as the government stated at sentencing that it was not recommending an upward departure, but was rather presenting the evidence in order to support a sentence at the high-end of the applicable guideline range.

Moreover, the presentation of the victim impact evidence fell within the terms of the plea agreement, which authorized the government to "inform the Court . . . of all facts pertinent to the sentencing process, including all relevant information concerning the defendant and his background." Indeed, Horsfall's daughter testified about how Horsfall sexually abused her at a young age, which goes to Horsfall's history and characteristics, a factor that is "pertinent to the sentencing process" under 18 U.S.C. § 3553(a)(1). Further, both her testimony and the victim impact statements addressed the factors under § 3553(a)(2)(A) – the need for the court's sentence to reflect the seriousness of the offense, promote

14

respect for the law, and provide just punishment for the offense – as they described the seriousness and long-lasting effects of sexual abuse and child pornography.  In addition, the victims' viewpoints were generally pertinent to the sentencing process, as the government was obligated by statute to ensure that these views were presented at sentencing.  See 18 U.S.C. § 3771(a)(4), (c)(1) (requiring the government to use its "best efforts" to ensure, inter alia, that crime victims are "reasonably heard at any public proceeding in the district court involving . . . sentencing").

Our decisions establish that government did not violate the plea agreement under these circumstances.  Because the agreement permitted the government to introduce such information and the government did not explicitly oppose a sentence within the guideline range, the government did not violate the plea agreement. See United States v. Levy, 374 F.3d 1023, 1030-32 (11th Cir. 2004) (holding that the government did not breach the plea agreement where it provided factual information about the defendant's offenses, because nothing in the agreement prevented the government from providing such information and the government fulfilled its obligation to recommend a particular sentence), vacated on other grounds and remanded, 545 U.S. 1101, 125 S.Ct. 2542 (2005), affirmed, 416 F.3d 1273 (11th Cir. 2005).

In <u>United States v. Carrazana</u>, 921 F.2d 1557, 1569 (11th Cir. 1991), the plea agreement prohibited the government from recommending a sentence, but permitted it to inform the court of all facts relevant to the sentencing process. At sentencing, the government, in effect, criticized the probation officer's recommended 20-year sentence on the ground that the defendant was the leader of the criminal enterprise. <u>Id.</u> Nonetheless, we held that this conduct did not breach the plea agreement because it was relevant to the sentencing process, and the government never agreed that it would refrain from characterizing the defendant as such. <u>Id.</u>; <u>see also</u> <u>Boatner</u>, 966 F.2d at 1578 ("The solemnization of a plea agreement does not preclude the government from disclosing pertinent information to the sentencing court.").

The precedent supports the proposition that the government does not breach a plea agreement where the agreement authorizes the government to provide certain factual information, and the government does not expressly violate another one of its obligations.[1] Thus, in this case, the government's presentation of the victim impact evidence did not breach the plea agreement because the government reserved the right to present such evidence and did not recommend an upward

---

[1] Horsfall does not cite the above decisions, but rather relies on our decisions in <u>Taylor</u>, <u>United States v. Rewis</u>, 969 F.2d 985 (11th Cir. 1992), and <u>United States v. Johnson</u>, 132 F.3d 628 (11th Cir. 1998), all of which we consider to be distinguishable.

16

departure.

**B.** **Upward Departure**

Horsfall contends that the court erred by imposing an upward departure. He also argues that he did not waive his argument for purposes of appeal under United States v. Masters, 118 F.3d 1524 (11th Cir. 1997) by withdrawing his upward-departure objections at sentencing.

In Masters, defense counsel repeatedly objected to the district court's upward departure at sentencing, but the court indicated that it would nonetheless impose the departure. 118 F.3d at 1525. As defense counsel was informing the court that he intended to appeal the decision, the defendant "intervened and instructed counsel to withdraw the objection." Id. at 1526. The colloquy on this point provided:

| Defense Counsel: | Your honor, I withdraw any objections based upon the specific request of my client. |
| --- | --- |
| Mr. Masters: | Your honor, please sentence me and let me get out of here. |
| The court: | All right, let the record show he is withdrawing any objection, and I will go ahead and sentence the defendant. |

Id. On appeal, the defendant challenged the court's upward departure, but we concluded that he had waived his argument:

> The court did err; everyone in the courtroom (except the court), including the defendant, knew it. Masters, however, waived the objection, and he did so knowingly. The plain error doctrine is inapplicable in a situation such as this – where the defendant fully comprehends the error the court is going to commit and nonetheless agrees to be bound by it.

Id. (footnote omitted).

In this case, the district court inquired as to Horsfall's written upward-departure objections to the PSI, at which point defense counsel informed the court that Horsfall had withdrawn the objections. The court asked why counsel would withdraw these objections, to which counsel responded that Horsfall had requested that he do so. The court then took the additional measure of asking Horsfall himself whether he had in fact requested his attorney to withdraw the objections, and Horsfall responded that he had. We conclude that Horsfall's affirmative withdrawal of these objections precludes us from reviewing his upward-departure argument.

Horsfall contends that he has preserved his argument because he originally objected to the upward departure, and the district court, at the end of the sentencing hearing, stated that he did not need to re-articulate his objections in order to preserve them. The district court was generally correct that Horsfall did not need to re-articulate his objections in order to preserve them for purposes of appeal. United States v. Weir, 51 F.3d 1031, 1033 (11th Cir. 1995). However, this did not

18

prevent Horsfall from waiving a previously articulated objection under Masters.

Accordingly, we conclude that Horsfall has waived his argument challenging the

court's upward departure.[2]

## C.    **Eighth Amendment**

Finally, Horsfall contends that the district court's consideration of the victim

impact evidence violated the Eighth Amendment.  However, because Horsfall

failed to raise this argument in the district court, we review it for plain error.

United States v. Raad, 406 F.3d 1322, 1323 (11th Cir. 2005).  "Plain error occurs

where (1) there is an error; (2) that is plain or obvious; (3) affecting the defendant's

substantial rights in that it was prejudicial and not harmless; and (4) that seriously

affects the fairness, integrity, or public reputation of the judicial proceedings."  Id.

(quotations omitted).

To support his argument, Horsfall relies on Booth v. Maryland, 482 U.S.

496, 107 S.Ct. 2259, 96 L.Ed.2d 440 (1987), South Carolina v. Gathers, 490 U.S.

805, 109 S.Ct. 2207, 104 L.Ed.2d 876 (1989), and Payne v. Tennessee, 501 U.S.

808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991), all of which involved the admission

of victim impact evidence during the sentencing phase of a capital case.  Based on

---

[2] Despite discussing Masters and the waiver issue in his initial brief, Horsfall argues for the first time in reply that Masters does not apply because he did not fully comprehend the error that the court was going to commit.  We decline to address this argument because Horsfall raises it for the first time in reply.  Levy, 379 F.3d at 1244.

these cases, and without citing any authority, Horsfall states that "it is undoubtedly true that when the case involves the sexual abuse of children that the likelihood that the sentence will be imposed under the influence of passion or prejudice is just as great as in a death penalty case."

However, Horsfall cites no authority establishing that this line of cases, dealing with the presentation of victim impact evidence to a capital sentencing jury, applies to federal judge-based sentencing in the non-capital child pornography context. Accordingly, Horsfall has not shown plain error on this point. See United States v. Lejarde-Rada, 319 F.3d 1288, 1291 (11th Cir. 2003) ("It is the law of this circuit that, at least where the explicit language of a statute or rule does not specifically resolve an issue, there can be no plain error where there is no precedent from the Supreme Court or this Court directly resolving it.").

## III.

In sum, we conclude that the government did not violate the plea agreement in its written response to Horsfall's objections to the PSI or by presenting victim impact evidence at sentencing. We further conclude that Horsfall has waived his argument challenging the court's upward departure because he affirmatively withdrew it at sentencing. Finally, Horsfall has not shown that the district court

20

committed plain error under the Eighth Amendment by considering the victim impact evidence at sentencing. Accordingly, we affirm.

**AFFIRMED.**