[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 09-13511
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 18, 2011
JOHN LEY
CLERK

District Court Docket No. 09-10012-CR-KMM


UNITED STATES OF AMERICA,

                                                        Plaintiff-Appellee,

                        versus

ALEXIS LEON PEREZ,

                                                        Defendant-Appellant.


_____

No. 09-13559
_____

District Court Docket No. 09-10012-CR-KMM


UNITED STATES OF AMERICA,

                                                        Plaintiff-Appellee,

                        versus

SERGUEY ORTIZ MEDINA,

                                                        Defendant-Appellant.

_____

Appeals from the United States District Court
for the Southern District of Florida
_____

(March 18, 2011)

Before EDMONDSON and PRYOR, Circuit Judges, and EVANS,[*] District Judge.

EVANS, District Judge:

Alexis Leon Perez ("Perez") and Serguey Ortiz Medina ("Medina") appeal their sentences on one count of conspiracy to encourage and induce aliens to enter and reside in the United States, knowing and in reckless disregard of the fact that such coming to, entry, and residence is and will be in violation of Title 8 U.S.C. § 1324(a)(1)(A)(iv).[1] Medina argues that the district court erred in enhancing his guideline offense level by two points for intentionally or recklessly creating a substantial risk of death or serious bodily injury to another person under U.S.S.G. § 2L1.1(b)(6). Perez argues that the district court erred in refusing to reduce his

_____

[*]The Honorable Orinda Evans, United States District Judge for the Northern District of Georgia, sitting by designation.

[1]Both Perez and Medina also were charged with 32 counts of alien smuggling, in violation of 8 U.S.C. § 1324(a)(1)(A)(iv) and 18 U.S.C. § 2. Pursuant to negotiated plea agreements, both Perez and Medina entered pleas of guilty to the conspiracy charge and the government agreed to dismiss the 32 counts of alien smuggling. On July 6, 2009 the district court sentenced Perez and Medina to 60 month terms of imprisonment, followed by two years of supervised release.

offense level by three points under U.S.S.G. § 2L1.1(b)(1) because he did not commit the offense for profit. Both Perez and Medina argue that the district court erred in imposing sentences which were substantially above their sentencing guideline ranges.[2] After careful consideration of Perez's and Medina's arguments, we affirm.

**BACKGROUND**

At the plea hearing, the government proffered the following facts, which both Perez and Medina agreed were correct: On January 4, 2009 the United States Coast Guard ("USCG") received information regarding a vessel in the area of Anguilla Cay, in the Bahamas. Upon intercepting the vessel, the USCG boarding team discovered a total of 34 persons on board, including the two suspected smugglers, Alexis Leon Perez and Serguey Ortiz Medina, and 32 Cuban nationals who did not have permission to enter the United States. Perez and Medina conspired to bring the 32 Cuban nationals into the United States knowing it would be in violation of U.S. law. The 32 Cuban nationals were repatriated to Cuba and Cuba accepted their return.

---

[2]We are addressing only those matters raised on appeal and will not discuss other aspects of the sentencing hearing.

According to each defendant's Presentence Investigation Report ("PSI"), Perez and Medina are Cuban citizens who had lived in the South Florida region of the United States for several years before the instant offense occurred. Perez's PSI states that Immigration and Customs Enforcement records indicate that Perez entered the country on January 11, 2003 and is "legally residing in the United States as a legal permanent resident." Medina's PSI states that Medina entered the United States in May 2007 and was issued an employment authorization document in July 2007, which expired June 7, 2008. On January 20, 2009 the Executive Office of Immigration Review had ordered Medina's removal.

The offense conduct section of the PSI explains that on January 4, 2009 the USCG interdicted a 32-foot recreation, go-fast vessel operated by two smugglers, identified as Perez and Medina. The USCG found 32 Cuban nationals on board who did not have permission to enter the United States. The Cuban nationals suffered from seasickness; one adult male was unconscious, but breathing with a steady pulse; and one adult female was five weeks pregnant. Perez and Medina were issued violations for overload of the vessel and insufficient number of personal flotation devices.

The PSI further explains that, after he was given Miranda warnings, Medina identified the other person from the boat as Perez and reported that the boat

4

belonged to Israel Gato ("Gato"), a fisherman. Medina stated Perez asked for permission to utilize the boat for a fishing trip, and Medina joined him to fish on the morning of January 4, 2009. When asked what type of bait he used, Medina stated that he did not know but described it as something very small and plastic. Medina also said he used a fishing pole. However, when the vessel was inventoried, there was no fishing equipment on board. Medina explained that he and Perez had gotten lost, and as night approached, they heard noises and then they saw a sinking boat. Medina stated that Perez rushed over to the vessel, described by Medina as a wooden boat with an engine that was not working, and rescued the "desperate and screaming" passengers who were sunburned and dehydrated. However, medical reports from the USCG did not indicate that any of the Cuban nationals were treated for sunburns or dehydration. Medina stated that he and Perez were going to take the Cuban nationals to the USCG, but the USCG located them first. Medina indicated that neither he, Perez, nor Gato had any relatives or friends among the Cuban nationals on the boat.

The PSI further explains that during a post-arrest statement, Perez identified the other person from the boat as Medina and reported that they had asked Gato to borrow the boat to go fishing. Perez explained that he had purchased fuel for the boat with cash before departure, and that he and Medina purchased food prior to

leaving but brought no additional food on the vessel because they planned to return Saturday night. Perez stated they used ballyhoo as bait and nylon thread, since they did not have any poles, and fished for six hours. When asked how the Cuban nationals came aboard the boat, Perez explained he and Medina came upon a sinking raft possibly made of metal and rubber containing the Cuban nationals. Perez stated that he planned to take the Cuban nationals to the police once they reached shore. Perez also indicated that neither he, Medina, nor Gato had any friends or relatives in the group of Cubans.

The PSI also states that in an interview, Gato explained that he had loaned his vessel to Medina so he could perform a tune up on the vessel. Gato asserted that he did not know where Medina was storing the vessel or when he had last used the vessel. He stated that Medina was allowed to use the vessel as he liked. Gato also stated that he did not keep any fishing gear on board because he spear-fishes.

On July 6, 2009, Perez and Medina jointly appeared for sentencing. The court first addressed Medina's objection to the enhancement for engaging in conduct creating the risk of serious bodily injury. The court recognized that some of the more aggravating circumstances that have been found in other cases did not occur here, but stated that smuggling 34 passengers in a 32 foot boat with only 15

life vests across open seas in the middle of the night with no lights and no navigational equipment is an invitation for disaster. Medina's counsel agreed that it is a recipe for disaster when you put people on board a boat with not enough life vests and with more people than the rating capacity of the boat. The court overruled Medina's objection and confirmed the PSI's conclusion[3] that Medina's total offense level was 17 and his criminal history category was I. This resulted in a sentencing guideline range of 24 to 30 months' imprisonment.

Counsel for Medina requested a sentence at the low end of the guideline range, stating that he was a 28 year-old man with no criminal history, had no history of being at sea or being stopped by the USCG, and had come to the United States in order to better financially support his wife and child in Cuba. Counsel also noted that there is nothing in the PSI to suggest that Medina arrived illegally to the United States, to which the district judge countered that there is nothing in the PSI to suggest he arrived legally either. The district court noted several factors

---

[3]The PSI set the base offense level for both Perez and Medina at level 12. No role adjustment was recommended for either defendant. Six levels were added under U.S.S.G. § 2L1.1(b)(2)(B) because the offense involved the transporting or harboring of between 25 to 99 unlawful aliens. Two levels were added under U.S.S.G. § 2L1.1(b)(6) because the offense intentionally or recklessly created a substantial risk of death or serious bodily injury to another person. Three levels were subtracted under U.S.S.G. §§ 3E1.1(a) and 3E1.1(b) for acceptance of responsibility and timely notifying authorities of their intention to plea guilty. The adjusted total offense level was therefore 17. With no criminal history points for either defendant and a criminal history category of I, the advisory guideline for imprisonment for both Perez and Medina was 24 to 30 months.

that it considered important for sentencing: the USCG interdicted the vessel, the vessel was overcrowded and had insufficient life vests, all the Cuban nationals suffered from seasickness, one adult male was unconscious, it was unclear whether Medina himself had come to the United States legally, and Medina had left behind his wife and child in Cuba. The district court also stated that 18 U.S.C. § 3553 requires the court to "consider the nature and circumstances of the offense." Further, the district court stated the sentence should "reflect the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense to afford adequate deterrence for criminal conduct." The district court concluded that it was not satisfied that the guideline sentence was adequate to provide deterrence and to protect the public from further crimes of the appellant, and sentenced Medina to a 60-month term of imprisonment and two years of supervised release.

Next the court addressed Perez's objection seeking a reduction in his offense level based on his claim that the offense was committed not for profit. Perez testified that he went out in the boat because he was concerned that his brother's boat might be in trouble. He stated that his brother's name was Edelvis Leon Perez, one of the Cuban nationals identified in the indictment. Perez further testified that his sole purpose was to save his brother, but when he found his

8

brother and the other passengers sinking, he had to pick up all the Cuban nationals because he could not allow any people to drown. He testified that no one paid him anything to make the trip and that he had never done anything like this before.

On cross-examination and re-direct, Perez stated that he originally told law enforcement that he did not have any relatives on the boat because he didn't want to get his brother into trouble. Before Perez stepped down from the witness stand, the court asked Perez's counsel whether Perez came to the United States legally, and his counsel responded that "he came on a raft in 2003."

The district court found that Perez's testimony was not credible. Also, Perez gave at least two directly contradictory statements about how he came upon the vessel, which "cast[ed] doubt on the truthfulness of his testimony" at the sentencing hearing. The court found that Perez bore the burden to establish by a preponderance of the evidence that the offense was not committed for profit, and Perez failed to meet that burden. This finding confirmed the PSI guideline calculation of a total offense level of 17 and criminal history category of I, resulting in a guideline range of 24 to 30 months' imprisonment.

Perez addressed the court and stated that he was repentant. Perez's attorney stated that Perez had been in the United States for six years, maintained steady employment throughout that time, had never been involved in this type of activity

9

before, and did not intend to lead a life of criminal activity. Perez's attorney noted that the government had agreed to recommend a sentence at the low end of the guidelines in the plea agreement and requested that the court impose a sentence of 24 months. The district court stated that Perez was similarly situated to Medina. The offense characteristics included a dangerous trip across the Florida Straits in a high speed go-fast boat that had an excess number of people and an inadequate number of life preservers on the boat. The court also noted that Perez himself came to the United States on a raft. The district court sentenced Perez to a 60-month term of imprisonment and two years of supervised release.

**DISCUSSION**

We review a district court's application of the sentencing guidelines to the facts <u>de novo</u> and the district court's factual findings for clear error. <u>United States v. Kinard</u>, 472 F.3d 1294, 1297 n.3 (11th Cir. 2006); <u>United States v. Jordi</u>, 418 F.3d 1212, 1214 (11th Cir. 2005). While the district court is no longer required to sentence within the guidelines, it is obligated to calculate the guidelines correctly. <u>United States v. Gibson</u>, 434 F.3d 1234, 1243 (11th Cir. 2006).

I.   <u>Enhancement of Medina's offense level by two levels under U.S.S.G.</u>
     <u>§ 2L1.1(b)(6)</u>

Medina argues that the district court erred when it overruled his objection to

the two level enhancement of his offense level for recklessly creating a substantial risk of death or serious bodily injury under U.S.S.G. § 2L1.1. Medina asserts that the government bears the burden of proof by a preponderance of the evidence for an enhancement to his offense level, and the government presented no evidence here.

As an initial matter, the government's assertion that Medina abandoned his challenge to the application of the two-level enhancement is incorrect. While Medina's counsel agreed that the facts presented "a recipe for, or an invitation for disaster," Medina did not specifically withdraw his objection so as to warrant this Court to declare it is precluded from reviewing Medina's objection. Cf. United States v. Horsfall, 552 F.3d 1275, 1283 (11th Cir. 2008) (holding that defendant affirmatively withdrew his objections to the PSI when the district court asked defendant's counsel twice, and the defendant himself, whether he wanted to withdraw his objections).

Turning to the merits of the objection, U.S.S.G. § 2L1.1(b)(6) provides: "If the offense involved intentionally or recklessly creating a substantial risk of death or serious bodily injury to another person, increase by 2 levels . . . ." U.S.S.G. § 2L1.1(b)(6). The commentary elaborates that reckless conduct includes a wide variety of conduct including carrying substantially more passengers than the rated

11

capacity of a motor vehicle or vessel or harboring persons in a crowded, dangerous, or inhumane condition.  Id. at n.5.

The district court may rely on uncontested factual statements in the PSI for purposes of sentencing.  United States v. Polar, 369 F.3d 1248, 1255 (11th Cir. 2004).  Medina's PSI contained numerous facts relevant to the issue at hand which were not contested.  There were more passengers than the boat's capacity, there was an insufficient number of personal flotation devices on the boat, and the boat was traveling in rough seas at night without using any type of lighting or navigational device. These facts alone are sufficient to establish that Medina's conduct recklessly created a substantial risk of death or serious bodily injury.  See United States v. Rodriguez-Lopez, 363 F.3d 1134, 1138 (11th Cir. 2004) ("We find no material distinction between smugglers who transport aliens in motor vehicles without providing them with adequate safety measures, and the present case where Rodriguez-Lopez and Garcia-Santos operated a boat in a hazardous manner while transporting aliens who were not wearing life jackets.").

We find that the government met its burden to establish by a preponderance of the evidence that the offense involved intentionally or recklessly creating a substantial risk of death or serious bodily injury to another person.  The district

court did not err when it enhanced Medina's offense level by two levels under U.S.S.G. § 2L1.1(b)(6).

II.    Denial of Perez's request for a three-level downward adjustment of his offense level under U.S.S.G. § 2L1.1(b)(1)

Perez argues that the district court clearly erred when it denied his request for a three-point downward adjustment pursuant to U.S.S.G. § 2L1.1(b)(1) because he did not commit the offense for profit but instead went to rescue his brother at sea. Perez asserts that while generally the defendant has the burden of proving the applicability of guideline sections which would reduce the offense level, the government bears the burden of proof here because the three-point decrease is not based on a mitigating factor, it is based on the lack of an aggravating factor. Perez contends that since the government did not produce any evidence regarding any type of payment for the transportation, the district court clearly erred in rejecting Perez's request for a three-level downward adjustment for committing the offense not for profit.

U.S.S.G. § 2L1.1(b)(1) provides, "If (A) the offense was committed other than for profit, or the offense involved the smuggling, transporting, or harboring only of the defendant's spouse or child . . . decrease by 3 levels." U.S.S.G. § 2L1.1(b)(1). The commentary for the section states, "other than for profit means

that there was no payment or expectation of payment for the smuggling, transporting, or harboring of any of the unlawful aliens." Id. at n.1. Perez, not the government, bears the burden of proof to show that U.S.S.G. § 2L1.1(b)(1) is applicable to him and that his offense level should therefore be reduced. United States v. Zaldivar, 615 F.3d 1346, 1352 (11th Cir. 2010) (holding that it is the defendant's burden to prove that the guidelines section which would reduce his sentence for committing the offense other than for profit is applicable).

Perez's testimony at the sentencing hearing that he made the trip to rescue his brother contradicts the statement he made to officers after his arrest that he and Medina had gone fishing that day and that he did not have any relatives on the boat. The court was entitled to discredit his testimony. Additionally, the facts suggest that the venture was undertaken for financial gain. The voyage was extremely dangerous and expensive and the risk incurred by Perez upon apprehension was great.

We conclude that the record supports the finding that Perez failed to meet his burden to establish by a preponderance of the evidence that the offense was committed other than for profit. The district court did not err when it denied Perez the three-point downward reduction of his offense level.

III.   Upward departure from the advisory sentencing guideline range; reasonableness of the sentences

The final sentence imposed by a district court is reviewed for reasonableness.  United States v. Booker, 543 U.S. 220, 264 (2005); United States v. Crawford, 407 F.3d 1174, 1178 (11th Cir. 2005).  The district court must impose a sentence that is both procedurally and substantively reasonable, which this Court analyzes under an abuse of discretion standard.  Gall v. United States, 552 U.S. 38, 51 (2007).  This Court must consider the final sentence, in its entirety, in light of the statutory factors to be considered in imposing a sentence pursuant to 18 U.S.C. § 3553(a).  United States v. Martin, 455 F.3d 1227, 1237 (11th Cir. 2006).  "The party who challenges the sentence bears the burden of establishing that the sentence is unreasonable in the light of both the record and the factors in [18 U.S.C. §] 3553(a)."  United States v. Thomas, 446 F.3d 1348, 1351 (11th Cir. 2006) (internal quotation marks and citation omitted).

Both Perez and Medina challenge the district court's upward departure to 60 months' imprisonment, claiming that the sentences are unreasonable and greater than necessary to comply with the statutory sentencing goals.  Perez asserts that none of the factors listed by the district court justified a sentence of 60 months' imprisonment when the guideline range was 24 to 30 months' imprisonment.

Medina argues that the doubling of his maximum guideline sentence was far from reasonable because the record is devoid of anything atypical about him or the circumstances surrounding the commission of the crime to warrant an upward departure. Medina asserts that he had zero criminal history, not even an arrest or a traffic violation; he was only a crew member on the boat, as opposed to Perez, who was the operator of the boat; and there were no aggravating factors such as fleeing from the USCG. Both Perez and Medina argue that the district court could not use the conduct that recklessly created a substantial risk of death or serious bodily injury, such as the passengers' seasickness, as a reason for both a two-level increase in the offense level and a reason to apply an upward departure from the sentencing guidelines.

A sentence may be procedurally unreasonable if the district court improperly calculates the guideline range, treats the guidelines as mandatory, fails to consider the appropriate statutory factors, selects a sentence based on erroneous facts, or fails to explain the chosen sentence adequately. Gall v. United States, 552 U.S. 38, 51 (2007). The district court need not discuss or state each § 3553(a) factor explicitly, but need only acknowledge that it has considered the defendant's arguments and the § 3553(a) factors. United States v. Scott, 426 F.3d 1324, 1329 (11th Cir. 2005). If a sentence is outside the guidelines range, this Court "may

16

consider the extent of the deviation, but must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." Gall v. United States, 552 U.S. 38, 51 (2007).

18 U.S.C. § 3553(a) states that the district court should impose a sentence that reflects the seriousness of the offense, promotes respect for the law, provides just punishment for the offense, deters criminal conduct, and protects the public from future crimes of the defendant. 18 U.S.C. § 3553(a). The court must also consider the following factors in determining a particular sentence: the nature and circumstances of the offense and the history and characteristics of the defendant; the need to reflect the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense; the need for deterrence; the need to protect the public; the kinds of sentences available; and the Sentencing Guidelines' range. Id. In addition, the premise guiding all these factors is that the sentence should be "sufficient, but not greater than necessary" to comply with its enumerated goals. Id.

In sentencing Perez and Medina, the district court stated it had considered the advisory guidelines, statutory factors, PSIs, sentencing objections, sentencing presentations, and arguments of counsel. The court stated that a sentence within the guideline range was not sufficient to reflect the seriousness of the offense, to

17

deter similar criminal conduct, to protect the public, to promote respect for the law, or to provide just punishment. In support of this statement, the court noted the dangerous circumstances surrounding the offense, referencing the over-capacity go-fast vessel, the inadequate number of life vests, the seasickness, the dangers of the voyage, and the history and characteristics of each appellant. The district court noted that Perez and Medina showed disrespect to law enforcement by lying about their involvement in the offense.

Perez and Medina's contention that the court could not consider the seriousness of the offense because that was already accounted for by the two-level enhancement is incorrect. One of the § 3553(a) factors that a court must consider in sentencing is the circumstances of the offense; this includes the dangerousness of the offense. 18 U.S.C. § 3553(a). The district court reasonably concluded that an above-guideline sentence was appropriate because the offense involved putting 32 people in serious danger.

Medina's contention that the district court did not adequately explain Medina's above-guidelines sentence also fails. The court identified facts upon which it based the sentences, noted that it was to impose the sentences only after considering the § 3553(a) factors, listed various factors that applied in this case, and then explicitly stated that it was not satisfied that the guideline sentences were

18

adequate to provide deterrence to criminal conduct and to protect the public from further crimes of the appellants. The district court therefore provided sufficient explanation of its above-guidelines sentence to allow meaningful appellate review.

Perez and Medina have not shown that their sentences were substantively unreasonable. Their willingness to engage in a large-scale, dangerous operation involving transporting many individuals from Cuba reasonably supports the district court's conclusion that an upward adjustment in the sentence was needed to deter Perez and Medina and protect the public from future crimes. The sentences imposed by the district court were supported by a "significant justification" as required by Gall v. United States, 552 U.S. 38, 50 (2007). It is also relevant that the district court only sentenced Perez and Medina to half the 120 month statutory maximum for the conspiracy offense. The sentences were "sufficient, but not greater than necessary." 18 U.S.C. § 3553(a).

We conclude that the district court's articulation of the core sentencing considerations and the facts that support them provide significant justification for the sentences imposed. Perez and Medina's sentences were reasonable. The district court's decision to impose an upward variance to 60 months' imprisonment was not an abuse of discretion.

**CONCLUSION**

Perez's and Medina's sentences are AFFIRMED.