[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-13977
Non-Argument Calendar

_____

D.C. Docket No. 1:11-cr-00302-CB-N-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus


CLAUDIA PEREZ-LEAL,
a.k.a. Claudia Magdalena Perez-Leal,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

(May 9, 2013)

Before HULL, MARCUS and ANDERSON, Circuit Judges.

PER CURIAM:

After pleading guilty, Defendant Claudia Perez-Leal appeals her total 216-month sentence for conspiracy and attempt to distribute cocaine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A), (b)(1)(B).  After review, we affirm.

## I.  BACKGROUND

### A.    Indictment and Plea Hearing

Perez-Leal and her husband were indicted on one count of conspiracy to possess with intent to distribute more than 5 kilograms of cocaine (Count One), one count of attempt to distribute approximately 4 kilograms of cocaine (Count Two), and one count of possession with intent to distribute approximately 5 kilograms of cocaine (Count Three).  Perez-Leal pled guilty to Counts One and Two, and Count Three was dismissed.

At her plea hearing, Perez-Leal objected to the government's factual proffer, in particular "the amounts [of cocaine] and some of the people involved." However, Perez-Leal indicated that she was willing to admit to the drug amounts charged in Counts One and Two of the indictment.  The district court found that the facts admitted by Perez-Leal supported the charges in Counts One and Two, accepted her guilty plea, and stated that the actual drug amounts would be resolved at sentencing.

**B.    Presentence Investigation Report**

In paragraphs 4 through 25, the presentence investigation report ("PSI") described Defendant Perez-Leal's offense conduct in the cocaine conspiracy, <u>inter alia</u>, as follows: (1) Perez-Leal and her husband operated a cocaine smuggling and distribution ring that funneled cocaine from Mexico to Texas and then on to Alabama; (2) after being arrested, several drug couriers admitted transporting cocaine for Perez-Leal to Alabama; (3) two of Perez-Leal's drug couriers, Ramiro Sanchez-Salazar and Eleazar Covarrubias, admitted making multiple trips to Foley, Alabama, and the recipient, Irvin Uriel Jimenez, admitted receiving a total of approximately 31 kilograms; (4) another of Perez-Leal's drug couriers, Victor Lupo-Angulo, admitted making between 10 and 15 deliveries to Luz Maria Burton in Mobile, Alabama, carrying between 10 and 20 kilograms of cocaine on each trip; (4) Lupo-Angulo said that he picked up the cocaine from Perez-Leal and her husband, and had the drugs processed by Luis Colon, who acted as a go-between for cocaine deliveries; (5) Salazar, Covarrubias, Jimenez and Colon all identified Perez-Leal as the cocaine supplier; and (6) Perez-Leal arranged for the distribution from Mexico, to Texas and then to Alabama and supervised her husband and various couriers.

In paragraph 26, the PSI stated that the parties did not agree on the amount of cocaine involved in the conspiracy, and the probation officer conservatively

3

calculated that a total of 154 kilograms of cocaine was involved for relevant conduct purposes. However, because couriers Salazar, Covarrubias and Jimenez made some trips together, the probation officer relied on the government's assertion that Perez-Leal was accountable for 120 kilograms of cocaine, a lower amount, for calculating Perez-Leal's base offense level.

Based on these facts, the PSI recommended a base offense level of 36 because the offenses involved at least 50 kilograms of cocaine. See U.S.S.G. § 2D1.1(c)(2) (setting offense level at 36 for offenses involving between 50 kilograms and 150 kilograms of cocaine). The PSI also recommended: (1) a two-level increase, pursuant to U.S.S.G. § 2D1.1(b)(1), because firearms were found during a search of Salazar's residence; (2) a two-level increase, pursuant to § 2D1.1(b)(14)(B) and (C), because Perez-Leal had knowingly involved a person under the age of 18 in the importation of a controlled substance;[1] (3) a four-level increase, pursuant to § 3B1.1(a), because Perez-Leal was an organizer or leader of a criminal activity; and (4) a three-level decrease, pursuant to § 3E1.1, for acceptance of responsibility. With an adjusted offense level of 41 and a criminal history category of I, the PSI calculated an advisory guidelines range of 324 to 405 months' imprisonment.

## C.    Written Objections to the PSI

[1]Jimenez told authorities that Leal-Perez's children were present at some cocaine deliveries.

4

Perez-Leal filed written objections to the PSI, objecting to some of the factual allegations about the offense conduct.  For example, Perez-Leal contended that Colon, Salazar, Jimenez and Lupo-Angulo were not her agents or employees in the conspiracy and did not act under her control or direction, but rather that they all had buyer-seller relationships with each other.  However, Perez-Leal did not object to the individual amounts of cocaine identified in paragraphs 4 through 25.  Perez-Leal did object to paragraph 26, stating:  "[H]er accountability is less than 120 kilograms of cocaine."

With regard to the PSI's guidelines calculations, Perez-Leal objected to the two-level firearm enhancement and the two-level enhancement for involving a minor.  Perez-Leal also objected to the four-level leader role enhancement, stating that "she was merely a buyer-seller."

## D.    Sentencing Hearing

At the outset of the sentencing hearing, the district court stated that it understood there were "adjustments" to the PSI, one of which was that the two-level firearm enhancement "is to be deleted."  The prosecutor agreed.

The prosecutor further advised the district court that the parties also "agreed that the three level role adjustment was appropriate in this case as opposed to the four" as stated in the PSI.

The district court then confirmed that the "adjusted offense level, total offense level becomes a thirty-eight," and that the advisory guidelines range was 235 to 293 months, and the defense counsel agreed to that statement too. While the district court did not do the calculations expressly, the total offense level of 38 represented a drug quantity base offense level of 36, a three-level role increase, a two-level increase for involving a minor in the offense and a three-level reduction for acceptance of responsibility.

When the district court asked whether there was "any objection to those findings by the Court," defense counsel responded, "No, sir.  We have agreed on those."  The district court stated that it therefore "adopt[ed] the presentence [report], its other findings and conclusions as well as those that I have just made."

The district court then heard arguments as to the appropriate sentence. Perez-Leal argued for a downward variance from the 235-to-293-month range based on a variety of factors.  The district court granted her request, and imposed a 216-month sentence.

The district court asked whether the parties had any objections as to its findings, conclusions and manner of imposing the sentence.  Perez-Leal responded: "Not with regard to those things that you mentioned, judge.  But we object to the Court's actual sentence and submit that it should be much lower and that's all."

6

The district court prepared a written statement of reasons, attached to the judgment.  The statement of reasons stated, <u>inter alia</u>, that the district court (1) adopted the PSI with changes because the government and Perez-Leal agreed that the firearm enhancement did not apply and that Perez-Leal's role warranted only a three-level enhancement, rather than the four-level enhancement in the PSI; and (2) found that Perez-Leal "withdrew her objection to the drug amounts" and "her objection as to involving an individual under 18 years of age."

## II.  DISCUSSION

On appeal, Perez-Leal argues that the district court erred because it did not resolve and rule on her written objection to the PSI's drug quantity, as required by Federal Rule of Criminal Procedure 32, and make an independent assessment of the relevant conduct that should be attributed to her.  The government argues that Perez-Leal abandoned her objection to drug quantity at sentencing and thus the district court did not erroneously fail to rule on her objection.

### A.    Withdrawal of Drug Quantity Objection

Prior to the sentencing, Perez-Leal raised numerous written objections to the PSI, including an objection to the 120-kilogram amount in paragraph 26.  At the sentencing hearing, however, she affirmatively represented to the district court: (1) that she and the government had agreed to drop the two-level firearm enhancement and to lower the role-enhancement to three levels; (2) that, with these changes, her

adjusted offense level was 38; and (3) that her applicable advisory guidelines range was 235 to 293 months.

As Perez-Leal concedes, these calculations, to which she agreed, "assume[ ] a drug amount and base offense level based on 120 [kilograms] of cocaine." Thus, Perez-Leal withdrew her objection to the 120-kilogram amount in paragraph 26 as part of an agreement with the government, as the district court's subsequent statement of reasons indicates. See United States v. Horsfall, 552 F.3d 1275, 1283-84 (11th Cir. 2008) (stating that a defendant's withdrawal of a sentencing objection generally precludes appellate review of the objection for plain error).

**B.      Rule 32 Violation**

However, even if Perez-Leal did not affirmatively withdraw her written objection to paragraph 26, Perez-Leal's appeal still fails.

Under Rule 32, when the defendant objects to a factual statement in the PSI, the district court must "rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing." Fed. R. Crim. P. 32(i)(3)(B); see also United States v. Lawrence, 47 F.3d 1559, 1566 (11th Cir. 1995). On the other hand, the district court "may accept any undisputed portion of the presentence report as a finding of fact." Fed. R. Crim. P. 32(i)(3)(A).

8

We first note the district court adopted the findings in the PSI and thereby did implicitly overrule Perez-Leal's objection to the drug quantity in paragraph 26.

However, to the extent the district court failed to rule on Perez-Leal's written objection to drug quantity, the separate problem for Perez-Leal is that, at the end of the sentencing hearing, she did not complain about, or object to, the district court's not ruling on her drug quantity objection. Specifically, when the district court asked whether there were any objections to its findings, conclusions or the manner in which it had imposed the sentence, defense counsel said there were no objections to the things mentioned, which included the offense level of 38 and the resulting advisory guidelines range of 235 to 293 months. Instead, at the end of the sentencing hearing, Perez-Leal's only objection in the district court was to the length of the 216-month sentence. All this is to say, Perez-Leal is raising for the first time on appeal the claim that the district court failed to rule on her drug quantity objection.

"When sentence objections are raised for the first time on appeal, we consider them under the plain error doctrine to avoid manifest injustice." United States v. Garrison, 133 F.3d 831, 848 (11th Cir. 1998) (quotation marks omitted). To establish plain error, the defendant must show that "(1) an error occurred, (2) the error was plain, (3) the error affected substantial rights in that it was prejudicial and not harmless, and (4) the error seriously affected the fairness, integrity, or

public reputation of a judicial proceeding." United States v. Perez, 661 F.3d 568, 583 (11th Cir. 2011) (involving a Rule 32 violation claim). To show that a sentencing error "affected substantial rights," the defendant must show that but for the error, there was "a reasonable probability of a lesser sentence." See United States v. Underwood, 446 F.3d 1340, 1343-44 (11th Cir. 2006).

At a minimum, Perez-Leal has not shown that the district court's failure to resolve the objection to paragraph 26 affected her substantial rights. As to drug quantity, Perez-Leal objected to only paragraph 26 of the PSI, which stated the total amount of cocaine—120 kilograms—involved in the drug conspiracy. Other undisputed facts in the PSI, however, established that: (1) two of Perez-Leal's drug couriers, Salazar and Covarrubias, made multiple trips to Jimenez in Foley, Alabama, and in total Jimenez received about 31 kilograms of cocaine from Perez-Leal; and (2) another of Perez-Leal's drug couriers, Lupo-Angulo, picked up 10 to 20 kilograms of cocaine from Perez-Leal and her husband on 10 to 15 occasions, for a total of at least 100 kilograms. Perez-Leal did not dispute these facts at the sentencing hearing. [2]

---

[2]Perez-Leal never disputed the admissions of Salazar, Covarrubias, Jimenez and Lupo-Angulo that they made the trips or the amounts of cocaine they said were delivered. Perez-Leal's written objections disputed only the PSI's characterization of these men as working for her and instead claimed that she was in buyer-seller relationships with them. These factual objections were a corollary to her objection to the four-level leader-role enhancement and, thus, were necessarily withdrawn at sentencing when Perez-Leal agreed to the three-level role enhancement for supervising or managing these men.

10

In other words, Perez-Leal admitted that drug couriers she supervised transported at least 131 kilograms of cocaine on her behalf.  See United States v. Beckles, 565 F.3d 832, 844 (11th Cir. 2009) (stating that the "failure to object to allegations of fact in a PSI admits those facts for sentencing purposes and precludes the argument that there was error in them" (internal quotation marks omitted)).  Because Perez-Leal did not dispute these PSI facts, the district court was entitled to rely on them.  See United States v. Hedges, 175 F.3d 1312, 1315 (11th Cir. 1999); see also Fed. R. Crim. P. 32(i)(3)(A).  Likewise, these undisputed facts were sufficient to carry the government's burden to establish the disputed 120-kilogram amount in paragraph 26 by a preponderance of the evidence.

Under these particular circumstances, Perez-Leal has not shown a reasonable probability that she would have received a lower sentence if the district court had expressly ruled on her written objection to paragraph 26.  Thus, any alleged failure to strictly comply with Rule 32(i)(3)(B) as to paragraph 26 was not plain error.

**AFFIRMED.**