[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-11060
Non-Argument Calendar

_____

D.C. Docket No. 1:15-cr-00264-ODE-AJB-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

SHAWN LAMONT HOLLIS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(November 16, 2016)

Before MARCUS, WILSON, and ROSENBAUM, Circuit Judges.

PER CURIAM:

Shawn Lamont Hollis appeals his 33-month sentence of imprisonment after pleading guilty to trafficking in counterfeit Viagra.  He argues that the district court erred in calculating his guideline range under U.S.S.G. § 2B5.3.  For the reasons set forth below, we affirm.

## I.

Hollis pled guilty to one count of trafficking in a counterfeit drug, in violation of 18 U.S.C. § 2320(a)(4).  The remaining five counts charged in the indictment were dismissed.  As part of Hollis's negotiated plea agreement, the parties agreed to recommend that Hollis receive a one-level downward variance at sentencing for his expeditious guilty plea.

Before sentencing, a probation officer prepared a presentence investigation report ("PSR"), which calculated a guideline range of 37 to 46 months of imprisonment based on a total offense level of 19 and a criminal-history category of III.  In calculating Hollis's offense level, the PSR started with a base offense level of eight, U.S.S.G. § 2B5.3(a), added twelve levels because the "infringement amount" was at least $280,000, *id.* § 2B5.3(b)(1)(B),[1] added two levels because the offense involved a counterfeit drug, *id.* § 2B5.3(b)(5), and subtracted three levels because Hollis timely and fully accepted responsibility, *id.* § 3E1.1.

---

[1] Under U.S.S.G. § 2B5.3(b)(1)(B), if the infringement amount exceeds $5,000, the increase is determined by the loss table in § 2B1.1 for fraud and theft offenses.

Hollis's arguments on appeal relate to the PSR's calculation of the infringement amount. The infringement amount serves "as a principal factor in determining the offense level for intellectual property offenses," and it "should reflect the nature and magnitude of the pecuniary harm caused by [the defendant's] crimes." *Id.* § 2B5.3 cmt. backg'd. The infringement amount is calculated by multiplying (1) the number of "infringing items" (here, the counterfeit drugs) by (2) the "retail value"[2] of either (a) the "infringed item" (here, the real drugs) or (b) the infringing item. *See id.* § 2B5.3 cmt. n.2.

Whether the retail value of the infringed item or the infringing item is used depends on which value "is a more reasonable estimate of the resulting pecuniary harm." *Id.* § 2B5.3 cmt. backg'd. The Sentencing Commission has determined that the retail value of the infringed item is a more reasonable estimate of the resulting pecuniary harm in the specific situations listed in Application Note 2(A) of the commentary to § 2B5.3, including where the infringing item "is, or appears to a reasonably informed purchaser to be, identical or substantially equivalent to the infringed item." *See id.* 2B5.3 cmt. n.2(A)(i) & backg'd. In a case not covered by Application Note 2(A), the Commission has determined that the retail value of

---

[2] "Retail value" is defined as "the retail price of that item in the market in which it is sold." U.S.S.G § 2B5.3 cmt. n.2(C).

the <u>infringing</u> item is a more reasonable estimate of the resulting pecuniary harm. *Id.* § 2B5.3 cmt. n.2(B) & backg'd.[3]

Here, the PSR calculated an infringement amount of at least $280,000, which corresponds to a twelve-level increase under the loss table in § 2B1.1. According to the PSR, Hollis was responsible for a total of 9,520 counterfeit Viagra and Cialis pills. The PSR multiplied that number by a "conservative average" retail price of $29.50 per pill, which was based on an average of the retail prices for the generic and name-brand versions of these drugs. In other words, the PSR used the retail price of the <u>infringed</u> items to calculate the infringement amount. However, the PSR contains no specific finding that the counterfeit drugs were substantially equivalent to the infringed item. *See id.* § 2B5.3 cmt. n.2(A)(i). Using similar calculations, the PSR also determined that Hollis owed a total of $240,720 in restitution to the manufacturers of Viagra and Cialis.

Hollis filed objections to the PSR, contesting both the infringement and restitution figures. With respect to the infringement amount, Hollis argued that

> [t]he price per pill used in Paragraph 26 [of the PSR] is not applicable to Mr. Hollis because the 'market' in which these counterfeit pills were sold (sold on the street for approximately $2-3/pill to individuals who would not otherwise be able to afford to go to see a doctor nor pay for a valid prescription) would not be the same market in

---

[3] The commentary also suggests that a downward departure may be appropriate if the calculated infringement amount "substantially exceed[s] the actual pecuniary harm to the copyright or trademark owner." *Id.* § 2B5.3 cmt. n.5(C).

which genuine Viagra is sold for a much higher price per
pill.

Put differently, Hollis asserted that the court should use the retail value of the infringing item to calculate the infringement amount. For similar reasons, Hollis contended that the manufacturers of Viagra and Cialis had not suffered any loss requiring restitution, as he was not displacing any legitimate sales.

At sentencing, the district court began by noting that it had received a message from defense counsel that Hollis had withdrawn his objection to the twelve-level infringement-amount increase in Paragraph 35 of the PSR. After the court granted the agreed-upon one-level downward variance for acceptance and responsibility, the following colloquy took place:

> COURT: With the objection to Paragraph 35 having been withdrawn, what is the loss amount?

> DEFENSE COUNSEL: The loss amount for purposes of the guidelines was 280,000 and change as stated in Paragraph 35. We're withdrawing our objection to the loss amount.

> COURT: All right. So you have no objection to the determination that there should be 12 points added to the base offense level for loss amount?

> DEFENSE COUNSEL: For Paragraph 35 purposes. I do want to make clear that we're not conceding the loss amount for restitution purposes.

After hearing from both defense counsel and the government on the issue of restitution, the district court sustained Hollis's objections to the restitution amount.

5

Ultimately, the court sentenced Hollis to 33 months of imprisonment, at the low end of his revised guideline range. This appeal followed.

## II.

On appeal, Hollis contends that the district court plainly erred in calculating his infringement amount and guideline range under U.S.S.G. § 2B5.3. In Hollis's view, the court should have calculated the infringement amount using the retail value of the counterfeit pills, as opposed to the retail value of authentic Viagra or Cialis, because the evidence reflected that the counterfeit pills he trafficked in would not have appeared to a reasonably informed purchaser to be identical or substantially equivalent to legitimate pills. Alternatively, he asserts, the infringement amount should have been based on the value of generic pills and not the value of name-brand pills.

Ordinarily, with respect to the district court's guideline calculations, we review legal questions *de novo,* the district court's factual findings for clear error, and the district court's application of the Guidelines to the facts with due deference, which amounts to review for clear error. *United States v. Rothenberg*, 610 F.3d 621, 624 (11th Cir. 2010). As for objections to sentencing issues not raised in the district court, we review those for plain error. *United States v. Rodriguez*, 751 F.3d 1244, 1257 (11th Cir. 2014). To succeed on plain-error

review, a defendant generally must show an obvious error that affected his sentence. *See id.*

But we have held that a defendant's clear and affirmative withdrawal of a sentencing objection waives review of the objection on appeal, even for plain error. *United States v. Horsfall*, 552 F.3d 1275, 1283–84 (11th Cir. 2008); *United States v. Masters*, 118 F.3d 1524, 1525–26 (11th Cir. 1997) (stating that the "plain error doctrine is inapplicable" in a situation where a defendant knowingly withdraws a sentencing objection); *cf. United States v. Olano*, 507 U.S. 725, 733 (1993) ("Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right." (internal quotation marks omitted)). Relatedly and more generally, "[t]he doctrine of invited error is implicated when a party induces or invites the district court into making an error." *United States v. Harris*, 443 F.3d 822, 823 (11th Cir. 2006) (quoting another source). An invited error cannot be reviewed on appeal. *Id.* at 823–24.

Here, during the sentencing hearing, Hollis, through counsel, knowingly withdrew his objection to the PSR's application of a twelve-level increase under § 2B5.3(b)(1)(B). Specifically, he withdrew his objection that the PSR incorrectly relied on the retail value of the infringed item to calculate his infringement or loss amount, which is the same argument he presents here, albeit in a slightly more

clarified form than he presented below.  Hollis's affirmative withdrawal of his objection to the infringement amount waived review of that issue on appeal, even for plain error.  *See Horsfall*, 552 F.3d at 1283–84; *Masters*, 118 F.3d at 1525–26. To the extent Hollis's new argument—that the district court should have used the price of generic pills rather than name-brand pills—falls outside of that waiver, he invited any error on appeal by expressly telling the district court that the "loss amount for purposes of the guidelines was [\$]280,000 and change[,] as stated in [the PSR]." *See Harris*, 443 F.3d at 823.

Accordingly, because Hollis has either waived or invited the errors of which he complains on appeal, we cannot review his sentencing challenges, even for plain error.  We therefore affirm Hollis's sentence.

**AFFIRMED.**

8