[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-12944
Non-Argument Calendar
_____

D.C. Docket No. 4:12-cr-00145-WTM-GRS-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ANTHONY J. REED,
a.k.a. Atlanta,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia
_____

(March 26, 2015)

Before ROSENBAUM, JULIE CARNES, and FAY, Circuit Judges.

PER CURIAM:

Anthony J. Reed appeals his sentence of 60 months of imprisonment after pleading guilty to one count of theft of government property, in violation of 18 U.S.C. § 641. On appeal, Reed argues that the district court committed plain error in applying two provisions of the United States Sentencing Guidelines Manual ("U.S.S.G.") regarding the total loss amount, U.S.S.G. § 2B1.1(b)(1)(E), and his role in the offense, U.S.S.G. § 3B1.1(a). After careful consideration, we affirm Reed's sentence.

## I.

Reed was involved in a scheme to cash stolen federal tax-refund checks issued by the United States Treasury. In essence, Reed provided Raeem Sinclair with stolen Treasury checks, and Sinclair, in turn, used others, including bank tellers, to cash them. Reed, Sinclair, and the others would then split a portion of the proceeds, with the remainder going to unidentified individuals in Atlanta.

The scheme came to light in March 2012, when a SunTrust Bank ("Bank") Investigator learned that one of its tellers had cashed several Treasury checks that were later returned as stolen or forged. During subsequent interviews, the teller admitted her involvement in the scheme and identified Sinclair as the source of the checks. Investigators later identified a second bank teller who was involved in the scheme, as well as at least one other person who had presented the stolen checks for cashing. In total, investigators found that the two tellers had cashed around

2

$90,000 in stolen Treasury checks. Sinclair agreed to cooperate in the criminal investigation conducted by the police and the United States Secret Service.

In June 2012, Sinclair conducted a monitored phone call to an individual known as "Atlanta," who was later identified as Reed, in order to arrange a meeting at a hotel near Savannah, Georgia, for Reed to provide Sinclair with stolen Treasury checks. Reed arrived at the hotel with five stolen checks totaling $11,025, and he was arrested shortly after providing these checks to Sinclair. During a subsequent search of Reed's personal property, investigators discovered a sheet of paper containing names, dates of birth, and Social Security numbers.

A federal grand jury indicted Reed on one count of theft of U.S. Treasury checks, in violation of 18 U.S.C. § 641. Reed pled guilty pursuant to a written plea agreement, in which Reed agreed that "[t]he loss in this case exceeds $70,000."

In the presentence investigation report ("PSR"), the probation officer held Reed accountable for a total of just over $100,000 in stolen Treasury checks, and applied an eight-level increase under U.S.S.G. § 2B1.1(b)(1)(E) for a loss amount of more than $70,000 but less than $120,000. The probation officer also applied a four-level organizer or leader adjustment under U.S.S.G. § 3B1.1(a) because Reed managed his girlfriend, who had driven him to the meeting with Sinclair. Reed's resulting advisory guideline range was 51 to 63 months of imprisonment. Reed

3

initially objected to the application of §§ 2B1.1(b)(1)(E) and § 3B1.1(a), but he withdrew those objections before his sentencing hearing.

At sentencing, Reed personally objected to the PSR's statements regarding the loss amount and his role in the offense.  His attorney, however, stated that she had withdrawn these objections because she did not have a legal basis on which to object.  When prompted by the district court to explain his position, Reed contended that he should not be held responsible for the full loss amount because Sinclair had obtained checks from another person, and because Reed was incarcerated from February 1 to March 5, which allegedly showed that he could not have provided the checks that were cashed during that time.  Regarding the role adjustment, Reed claimed that Sinclair was the organizer or leader of the criminal activity and that his girlfriend was not a participant.

The government noted that Reed had agreed in the plea agreement that the loss amount exceeded $70,000.  Reed responded that he had told his attorney that the monetary amount was incorrect and she had informed him that they could object at sentencing.  Because the lead government attorney on the case was not present, the district court continued the sentencing hearing to allow that attorney to be present and to allow Reed time to discuss the issues with his attorney.

After the hearing, the government filed a notice arguing that Reed should be sentenced above the guideline range, as well as a "Sentencing Position Paper"

stating that, in light of Reed's contentions at the sentencing hearing, the government would oppose any reduction in Reed's sentence for his acceptance of responsibility and would be moving for an enhancement for obstruction of justice.

When the sentencing hearing resumed several months later, Reed's counsel stated that Reed wished to withdraw his objections to the PSR. The district court then asked Reed directly whether he was withdrawing the objections that he had presented at the initial sentencing hearing, to which Reed responded, "Yes, sir." The court proceeded to question Reed whether he was withdrawing the objections because of the government's intent to seek a higher sentence or because he thought he was wrong in his objections. After conferring with counsel, Reed explained that he was withdrawing his objections because he believed he was wrong, and his attorney stated that Reed better understood that the objections lacked a legal basis.

Following this exchange, the government indicated it had no objections to the PSR's guidelines calculations, and the district court adopted the PSR and its guideline range of 51 to 63 months. The court then sentenced Reed to serve 60 months in prison, noting that it would have imposed a higher sentence had Reed not withdrawn his objections. This appeal followed.[1]

---

[1] This timely appeal comes after the district court re-imposed sentence against Reed, pursuant to this Court's decision in *United States v. Phillips*, 225 F.3d 1198, 1201 (11th Cir. 2000), upon granting Reed's motion for post-conviction relief under 28 U.S.C. § 2255 based on plea counsel's failure to file a timely notice of appeal from the original judgment.

## II.

Ordinarily, we review a district court's loss calculation for clear error and its application of the Sentencing Guidelines *de novo*. *United States v. McCrimmon*, 362 F.3d 725, 728 (11th Cir. 2004). And we review for clear error the district court's determination that a defendant is subject to a § 3B1.1(a) role enhancement as an organizer or leader. *United States v. Martinez*, 584 F.3d 1022, 1025 (11th Cir. 2009); *see United States v. Rodriguez De Varon*, 175 F.3d 930, 937-38 (11th Cir. 1999) (*en banc*) (holding that a defendant's role in the offense is a finding of fact reviewed only for clear error).

When an issue is raised for the first time on appeal, however, we generally review for plain error only. *United States v. Johnson*, 694 F.3d 1192, 1195 (11th Cir. 2012). Plain error occurs where there is (1) an error (2) that is plain or obvious and (3) that has affected the defendant's substantial rights; and, if the first three prongs are met, the error may be corrected if it (4) "seriously affects the fairness, integrity or public reputation of the judicial proceedings." *Id.* (quotation marks omitted); *United States v. Madden*, 733 F.3d 1314, 1319 (11th Cir. 2013).

But we have held that a defendant's affirmative, voluntary, and knowing withdrawal of a sentencing objection waives review of such objection on appeal, even for plain error. *United States v. Horsfall*, 552 F.3d 1275, 1283-84 (11th Cir. 2008); *United States v. Masters*, 118 F.3d 1524, 1525-26 (11th Cir. 1997); *cf.*

*United States v. Olano*, 507 U.S. 725, 733, 113 S. Ct. 1770, 1777 (1993) ("Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right." (internal quotation marks omitted)).

## III.

Reed argues that the district court committed plain error in applying both the eight-level loss-amount increase under § 2B1.1(b)(1)(E) and the four-level role-adjustment under § 3B1.1(a). Reed contends that the PSR's loss amount, which the court adopted, was speculative and was contradicted by other undisputed statements in the PSR, including that Reed was incarcerated for a period when some of the checks were cashed and that Sinclair obtained checks from another source. The aggravating role adjustment was plainly erroneous, Reed asserts, because his girlfriend was not a participant in the criminal activity.

Our review of the sentencing-hearing transcripts shows that Reed affirmatively withdrew his objections to the Sentencing Guidelines issues he now seeks to raise on appeal, so he has waived appellate review of those issues. *See Horsfall*, 552 F.3d at 1283-84; *Masters*, 118 F.3d at 1525-26. Through counsel, Reed initially withdrew his objections to the application of §§ 2B1.1(b)(1)(E) and 3B1.1(a) before the initial sentencing hearing, but he attempted to revive these objections at the hearing, leading the district court to continue sentencing. When

sentencing resumed several months later, Reed's counsel again stated that Reed wished to withdraw his objections, and the district court confirmed directly with Reed that he wished to withdraw the objections because he believed his objections were incorrect, not because he felt pressured by the government's actions. His attorney confirmed that Reed was withdrawing the objections because he understood that they were without a legal basis. In sum, Reed made a knowing and intelligent withdrawal of his objections, so he has waived review of these arguments on appeal. *See Horsfall*, 552 F.3d at 1283-84.

In any case, even if we treated the issues as forfeited, rather than waived, we could not say that the district court committed plain error in applying the enhancements. Given that Reed withdrew his objections, the district court was permitted to rely on the facts presented in the PSR. *See United States v. Aguilar-Ibarra*, 740 F.3d 587, 592 (11th Cir. 2014) (stating that "[a] district court may . . . base its factual findings on undisputed statements in the PSR," even conclusory ones for which "there is an absence of supporting evidence," "because a defendant is deemed to have admitted any such statements that he has not objected to with specificity and clarity" (internal quotation marks omitted)). The court also could rely on facts admitted by Reed during his guilty plea. *Martinez*, 584 F.3d at 1027.

With regard to the total loss amount, Reed admitted in his plea agreement that the loss amount was more than $70,000, which alone supports application of

§ 2B1.1(b)(1)(E).  *See id.*  What's more, the PSR describes an interview with Reed in which he stated that "he received approximately 10 percent of all the checks cashed and received a total of between $15,000 to $20,000 for his involvement in cashing the checks."  As the government points out, these figures suggest that Reed admitted his involvement with roughly $150,000 to $200,000 in stolen checks, which corresponds to a ten-level increase under § 2B1.1(b)(1)(F), rather than the eight-level increase that Reed received.  Accordingly, the district court did not plainly err in applying § 2B1.1(b)(1)(E) for a loss amount that was more than $70,000 but less than $120,000.  *See Johnson*, 694 F.3d at 1195.

With regard to Reed's role in the offense, the Sentencing Guidelines provide that a defendant is subject to a four-level increase if he was an organizer or leader of criminal activity involving five or more participants.  U.S.S.G. § 3B1.1(a).  Reed must have exercised "control or influence" over at least one other participant in the conspiracy for the enhancement to apply.  *United States v. Glover*, 179 F.3d 1300, 1302-03 (11th Cir. 1999); U.S.S.G. § 3B1.1, cmt. n.2.  The PSR found that Reed exercised control or influence over his girlfriend, but Reed contends that this finding could not support the four-level increase because his girlfriend was not a "participant."  *See* U.S.S.G. § 3B1.1, cmt. n.1 (stating that a "participant" is "a person who is criminally responsible for the commission of the offense, but need not have been convicted.").

Even if we agreed that Reed's girlfriend was not a participant, we may affirm the enhancement on other grounds revealed by the record. *United States v. Amedeo*, 370 F.3d 1305, 1319 n.12 (11th Cir. 2004). Here, the factual basis in the plea agreement and the undisputed statements in the PSR reflect the following facts regarding the role enhancement: Reed's girlfriend described him as more of a boss than "Jason," whom Reed identified as another participant; Reed had a list of names, dates of birth, and Social Security numbers; there were at least five other participants in the criminal activity; and Reed provided stolen Treasury checks to Sinclair, who would cash the checks and then return to Reed with the money, indicating that Reed was higher in the hierarchy than, and exercised some control or influence over, Sinclair. In all, Reed has not shown that these facts, under existing law, plainly or obviously could not support the court's application of § 3B1.1(a). *See Johnson*, 694 F.3d at 1195.

For these reasons, we conclude that Reed has waived appellate review of his challenge to the Sentencing Guidelines issues he raises in this appeal. Alternatively, the district court did not plainly err in applying the Guidelines provisions for loss amount and aggravating role. Therefore, we affirm.

**AFFIRMED.**

10