[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-14453
Non-Argument Calendar
_____

D.C. Docket No. 6:16-cr-00211-RBD-KRS-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

HUGO MARGENAT-CASTRO,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(November 6, 2018)

Before MARCUS, ROSENBAUM, and GRANT, Circuit Judges.

PER CURIAM:

Hugo Margenat-Castro appeals his sentence of 240 months' imprisonment

following his convictions for conspiracy to distribute and distribution of controlled

substances.  He argues that the sentence imposed by the district court is

procedurally and substantively unreasonable and that the government breached the plea agreement by effectively arguing for a variance above the Guidelines range. After a careful review of the record and the parties' briefs, we affirm.

## I. BACKGROUND

### A. The Offense Conduct

Margenat-Castro sold small bags of heroin to multiple customers every day from at least January 2015 through October 7, 2015. During that time period, he distributed more than 100 grams of heroin. Margenat-Castro advertised his heroin on a social media website called the "Experience Project," in message boards entitled "I Love Heroin" and "Heroin in Orlando." He obtained the heroin he sold from others, but he knew that it had been cut with sleeping pills and fentanyl (a strong opioid pain medication also used for anesthesia). He advertised his heroin as high in quality, but told authorities that the product he sold was so strong that he often advised his customers to use only half a bag at a time.

After visiting the Experience Project website, one customer, W.G., contacted Margenat-Castro and traveled from Georgia to Florida to buy heroin from him. W.G. used Margenat-Castro's heroin mix, overdosed, and died. According to the presentence investigation report ("PSI"), two other individuals (A.B. and T.W.) overdosed and died after using the mix of heroin and fentanyl sold by Margenat-Castro. The probation officer concluded, however—and the government agreed—

2

that Margenat-Castro was not legally responsible for the deaths of A.B. and T.W. because there were other contributing substances in their systems when they died.

## B. The Plea Agreement

Margenat-Castro entered a guilty plea to one count of conspiring to distribute heroin and one count of distributing fentanyl resulting in the death of another.  *See* 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(i), & (b)(1)(C); 21 U.S.C. § 846. Pursuant to a written plea agreement, the government agreed to dismiss three additional counts of distributing fentanyl; to bring no further charges related to the offense conduct; and to recommend a sentence "within the defendant's applicable guidelines range" in exchange for Margenat-Castro's guilty plea.  The plea agreement also provided, however, that the government reserved the right to "report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant"; to respond to comments made by the defense; to provide complete factual information about Margenat-Castro's criminal activity, not limited to the crimes charged; and to make appropriate recommendations regarding the disposition of the case, subject to the limitations specified in the plea agreement.

## C. The Sentencing Hearing

At the sentencing hearing, the district court adopted the probation officer's Guidelines calculations without objection from the parties.  Using the 2016

Sentencing Guidelines Manual, the probation officer calculated a base offense level of 38. *See* 21 U.S.C. § 841 (b)(1)(C); U.S.S.G. § 2D1.1(a)(2). The offense level was increased by two levels because the offense involved distribution of a controlled substance through interactive computer mass-marketing, *see* U.S.S.G. § 2D1.1(b)(7), and reduced by three levels for acceptance of responsibility because of Margenat-Castro's timely guilty plea, *see* U.S.S.G. §§ 3E1.1(a)–(b). The district court granted the government's motion for a two-level downward departure under U.S.S.G. § 5K1.1, reducing Margenat-Castro's total offense level to 35. With Margenat-Castro's criminal history category of I, his Guidelines sentencing range was 168–210 months' imprisonment. The statutory term of imprisonment for the crime of fentanyl distribution resulting in death is 20 years to life. 21 U.S.C. § 841(b)(1)(C).

In its presentation at the sentencing hearing, the government called seven victim impact witnesses, including three of W.G.'s family members, W.G.'s girlfriend, an assistant at a drug abuse counseling program that W.G. completed, and two of A.B.'s family members. The prosecutor then emphasized the fact that Margenat-Castro had knowingly sold heroin mixed with fentanyl—which is up to 50 times stronger than heroin—while misrepresenting to his customers that his product was high-quality heroin. The prosecutor asserted that while Margenat-Castro had presented his family history of heroin addiction and overdose-related

4

death as a mitigating factor, it should instead be considered an aggravator because it showed that Margenat-Castro knew firsthand the dangers of the drugs that he sold.

Margenat-Castro objected, contending that the government's argument for aggravating factors constituted a breach of the plea agreement because the government had agreed to recommend a sentence within the Guidelines range. The district court overruled the objection, stating that the court would wait to "see where [the prosecutor] end[ed] up in terms of his recommendation to the Court." The prosecutor acknowledged that he had agreed to recommend a Guidelines sentence and explained that his argument was in response to Margenat-Castro's presentencing request for a downward variance to 121 months. The prosecutor argued that a sentence of 121 months would not adequately reflect the seriousness of the defendant's crimes and requested that the court impose a "severe and substantial sentence of 210 months," the upper end of the Guidelines range.

Margenat-Castro, for his part, called five family members to testify on his behalf. He then addressed the court personally, expressing remorse for the harm he had caused. He also stated that he did not intend for anyone to get hurt and that he accepted full responsibility for his actions. Defense counsel highlighted Margenat-Castro's own heroin addiction along with the abuse and neglect he suffered during

childhood, and concluded by requesting a downward variance to 121 months' imprisonment.

Before imposing the sentence, the district court discussed its careful consideration of the 18 U.S.C. § 3553(a) sentencing factors, including specifically the nature of the offense and "the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). The judge stated that he "want[ed] to be moved to compassion" by Margenat-Castro's life story, but that he "k[ept] coming back to the destroyed lives that [he had] seen played out in the courtroom," and that Margenat-Castro "killed [W.G.] just as assuredly as if he had carelessly, without concern fired a gun into a crowd or being [sic] addicted to alcohol and run him down while driving drunk." The court acknowledged the Guidelines sentencing range of 163–210 months, but pointed out that the Guidelines were advisory in nature and concluded, after considering all of the § 3553 factors, that 240 months' imprisonment was a just sentence, and was "sufficient but not greater than necessary" to achieve the statutory purposes of sentencing. 18 U.S.C. § 3553(a).

Defense counsel objected that the sentence was substantively and procedurally unreasonable, asserting that "the Court may have improperly failed to consider the 3553(a) factors, may have selected a sentence based on erroneous facts, or failed to have adequately explained the chosen sentence or explained the

Court's upward variance." Counsel did not renew the objection to the government's purported breach of the plea agreement.

On appeal, Margenat-Castro argues that the sentence imposed by the district court is procedurally and substantively unreasonable and that the government breached the plea agreement by effectively arguing for a variance above the Guidelines sentencing range. In response, the government contends that Margenat-Castro failed to object with sufficient specificity in the district court to preserve either of those issues for appeal and that his claims do not survive plain-error review.[1]

## II. DISCUSSION

We review a district court's sentencing decisions for procedural and substantive reasonableness under an abuse-of-discretion standard, regardless of whether the sentence imposed is inside or outside the Guidelines range. *Gall v. United States*, 552 U.S. 38, 41, 51, 128 S. Ct. 586, 591, 597 (2007); *see United States v. Pugh*, 515 F.3d 1179, 1190 (11th Cir. 2008). In reviewing a sentence for reasonableness, we first determine whether the district court committed any "significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to

---

[1] Because we conclude that Margenat-Castro's claims fail even under the usual standards of review, we need not reach the government's contention that they should be reviewed only for plain error.

consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *Gall*, 552 U.S. at 51. If the sentence is free of any significant procedural error, we then evaluate the sentence for substantive reasonableness—that is, whether the sentence imposed is reasonable under the circumstances when viewed in light of the § 3553(a) sentencing factors. *See id.*; *United States v. Irey*, 612 F.3d 1160, 1189-90 (11th Cir. 2010) (en banc). The party challenging the sentence bears the burden of showing that it is unreasonable. *United States v. Flanders*, 752 F.3d 1317, 1339 (11th Cir. 2014).

We review a defendant's claim that the government breached a plea agreement de novo. *See United States v. Mahique*, 150 F.3d 1330, 1332 (11th Cir. 1998). "'Whether the government violated the agreement is judged according to the defendant's reasonable understanding at the time he entered his plea.'" *United States v. Horsfall*, 552 F.3d 1275, 1281 (11th Cir. 2008) (citation omitted).

**A. Procedural Reasonableness**

Margenat-Castro argues that the district court's sentence was procedurally unreasonable because the court failed to engage in an individualized consideration of the factors set forth in § 3553(a), did not properly consider the applicable Guidelines sentencing range, and did not adequately explain its reasons for varying

8

upward from the Guidelines range. He also argues that, by equating his conduct with manslaughter, the district court based his sentence on clearly erroneous facts. None of these contentions are correct.

### 1. Consideration of § 3553(a) Sentencing Factors

Margenat-Castro complains that, in sentencing him to 240 months, the district court failed to take into account his "history and characteristics," as required by 18 U.S.C. § 3553(a)(1), and the applicable Guidelines sentencing range, pursuant to § 3553(a)(4). This argument borders on the frivolous. The district court expressly stated—more than once—that it had considered all of the § 3553(a) factors, and the court discussed "the nature and circumstances of the offense and the history and characteristics of the defendant" at length. 18 U.S.C. § 3553(a)(1). The court referenced Margenat-Castro's conduct in the context of the current "opioid epidemic" and called the addition of fentanyl to profit from those who struggle with addiction to opioids and heroin "a predacious evil." The court went on to discuss Margenat-Castro's difficult childhood and family history of heroin addiction, as well as his significant cooperation with the government.

During its discussion, the district court also specifically referenced several other sentencing factors, acknowledging that the sentence not only must take into account the nature of the crime and the history and characteristics of the defendant, but also must "reflect the seriousness of the [offense]," "promote respect for the

9

law," and "send a message of deterrence." 18 U.S.C. § 3553(a)(2)(A); *see* 18

U.S.C. § 3553(a)(2)(B). The court also explained its duty to impose punishment

that "is sufficient but not greater than necessary to achieve the statutory purposes

of sentencing." *See* 18 U.S.C. § 3553(a).

Finally, the court explicitly considered the applicable Guidelines sentencing

range. The court stated that it had reviewed the PSI and adopted the probation

officer's Guidelines calculations. The court then noted the correct resulting

Guidelines sentencing range of 168–210 months, specifically recognizing that the

sentence that it imposed was an upward variance from the Guidelines range.

This record is sufficient to show that the district court adequately considered

all of the § 3553(a) factors, including the history and characteristics of the

defendant and the applicable Guidelines sentencing range. There is no requirement

that a court specifically reference each and every factor in its discussion, so long as

the court indicates that it has considered them. *See United States v. McGarity*, 669

F.3d 1218, 1263 (11th Cir. 2012).

### 2. Explanation of Sentence

Under 18 U.S.C. § 3553(c)(2), if the district court imposes a sentence

outside the Guidelines range, it must state its reasons for doing so on the record in

sufficient detail so that this Court can meaningfully review whether the deviation

was justified. *United States v. Parks*, 823 F.3d 990, 997 (11th Cir. 2016). When

10

explaining the reasons for selecting a defendant's particular sentence, the sentencing judge need only "set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." *Rita v. United States*, 551 U.S. 338, 356, 127 S. Ct. 2456, 2468 (2007); *see Irey*, 612 F.3d at 1194-95. A court's statement that it has considered the parties' arguments and the § 3553(a) factors in deciding what sentence to impose is sufficient explanation to meet the statutory requirements. *McGarity*, 669 F.3d at 1263.

Here, the district court stated that it had considered the PSI, the defense psychologist's report and other PSI attachments, Margenat-Castro's sentencing memorandum, the parties' arguments, and all of the § 3553(a) factors. In explaining its upward variance, the court acknowledged the Guidelines sentencing range but noted the advisory nature of the Guidelines. The court also emphasized its duty to choose a sentence that "recognizes the individual nature of the defendant, the seriousness of the crime, the loss to the victims, and the message of deterrence and the struggle at the end of it all to do the right thing."

At the hearing, the court pointed out that the defendant had "used the internet to peddle poison and death," and said that the fact that Margenat-Castro used his own product showed either "a separation from the world of rational thinking or perhaps a gross recklessness" and lack of concern for the consequences

11

to himself or others.  Later, in its written Statement of Reasons, the district court based the upward variance on "[t]he nature and circumstances of the offense pursuant to 18 U.S.C. § 3553(a)(1), including "[v]ictim [i]mpact," and the need "[t]o reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense" pursuant to § 3553(a)(2)(A).  And in its narrative providing additional grounds for the upward variance, the court identified "the impact to the victim; specifically, the victim's death, the strong need for deterrence in the face of an ongoing crisis of opio[i]d related death in connection with heroin laced with fentanyl and the need to protect the public."  These explanations were more than sufficient to satisfy the requirements of § 3553(c)(2).

### 3. Alleged Reliance on Clearly Erroneous Facts

For the first time on appeal, Margenat-Castro argues that the district court improperly equated his offense conduct with manslaughter—and in so doing relied on "clearly erroneous facts"—when the judge remarked that "[t]he defendant killed [W.G.] just as assuredly as if he had carelessly, without concern fired a gun into a crowd or being [sic] addicted to alcohol and run him down while driving drunk."  But the district court did not expressly equate Margenat-Castro's conduct with the crime of manslaughter.  Nor did it make any findings of fact when it characterized Margenat-Castro's conduct in connection with the offense as careless.  The facts relevant to that description—that Margenat-Castro knowingly sold sleeping-pill-

12

and fentanyl-laced heroin to W.G. and that those drugs caused W.G.'s overdose and death—were admitted in the plea agreement and included without objection in the PSI. *See United States v. Philidor*, 717 F.3d 883, 885 (11th Cir. 2013) (a "district court may rely on undisputed facts contained in the PSI" when sentencing). This aspect of Margenat-Castro's procedural reasonableness claim also fails.

## B. Substantive Reasonableness

A sentence may be substantively unreasonable if, under the totality of the circumstances, it "'fails to achieve the purposes of sentencing as stated in § 3553(a).'" *Pugh*, 515 F.3d at 1191 (citation omitted). In this regard, a district court abuses its discretion if, in deciding what sentence to impose, it "'selects the sentence arbitrarily, bases the sentence on impermissible factors, [or] fails to consider pertinent section 3553(a) factors.'" *Id.* at 1191-92 (citation omitted). This Court will consider the extent of any variance from the applicable Guidelines range in determining whether a sentence is reasonable, but we "must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Gall*, 552 U.S. at 51. A sentence generally will be found to be substantively reasonable if it is "'in the ballpark' of permissible outcomes." *Irey*, 612 F.3d at 1189 (citation and punctuation omitted).

Margenat-Castro claims that the sentence imposed is substantively unreasonable because it is greater than necessary to effectuate the purposes of sentencing, and because the sentencing judge relied on improper or irrelevant factors; namely, his purported treatment of Margenat-Castro's drug offenses as equivalent to manslaughter and his personal belief in the need for deterrence in light of the current opioid crisis. At bottom, Margenat-Castro contends that the district court gave too much weight to the nature and severity of the offense, including the death of W.G., and failed to give sufficient consideration to his background and personal characteristics. But the weight given to any of the § 3553(a) sentencing factors is generally within the discretion of the district court, and the court may, in the exercise of that discretion, "attach 'great weight' to one factor over others." *United States v. Rosales-Bruno*, 789 F.3d 1249, 1254 (11th Cir. 2015) (citation omitted); *United States v. Shaw*, 560 F.3d 1230, 1237 (11th Cir. 2009).

A sentence imposed outside the Guidelines range is not automatically presumed to be unreasonable, nor is there a "rigid mathematical formula" to analyze the justification necessary for a particular degree of variance. *Gall,* 552 U.S. at 47. While the district court must have a justification compelling enough to support the degree of any variance and complete enough to allow meaningful appellate review, we will vacate a sentence only if we are "'left with the definite

14

and firm conviction that the district court committed a clear error in judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case.'" *Pugh*, 515 F.3d at 1191 (citation omitted).

We conclude that Margenat-Castro has not met his burden of demonstrating that the sentence imposed by the district court was substantively unreasonable. Notably, the sentence imposed is the statutory minimum for the offense, and would have been the minimum under the Guidelines but for the government's request for downward departure due to Margenat-Castro's cooperation. In fact, the sentence is well below the statutory maximum of life in prison. 18 U.S.C. § 841(b)(1)(C); *see United States v. Gonzalez*, 550 F.3d 1319, 1324 (11th Cir. 2008) (noting as an indicator of reasonableness the fact that a sentence was well below the statutory maximum).

## C. Alleged Breach of the Plea Agreement

The government must abide by any material plea-agreement promises it makes that are part of the inducement for the defendant to plead guilty. *Santobello v. New York*, 404 U.S. 257, 262, 92 S. Ct. 495, 499 (1971); *United States v. Taylor*, 77 F.3d 368, 370 (11th Cir. 1996). The government breaches a plea agreement when it takes a position directly contradictory to one required by an unequivocal promise in the plea agreement; for example, by advocating for a PSI

15

that recommended a sentence well over the one the government agreed to recommend as part of the plea agreement. *See Taylor*, 77 F.3d at 370-71. And the presentation of evidence contradicting a stipulation of fact in the plea agreement would also constitute a breach. *See United States v. Boatner*, 966 F.2d 1575, 1578 (11th Cir. 1992); *see also United States v. De La Garza*, 516 F.3d 1266, 1270 (11th Cir. 2008) (ultimately finding the breach harmless). But the government does not breach a plea agreement by providing pertinent background information to the probation officer or the court as long as it does not expressly violate any of its obligations under the agreement. *See Horsfall*, 552 F.3d at 1283.

Here, neither the government's presentation of victim impact statements nor its argument in support of its recommendation for an upper-end Guidelines sentence constituted a breach of the plea agreement with Margenat-Castro. In fact, the plea agreement specifically permitted the government to provide complete information regarding Margenat-Castro's "background, character, and conduct," including all criminal activity, whether related to the crimes charged or not; information about other deaths involving the heroin-fentanyl mixture sold by Margenat-Castro would certainly qualify. And while the government argued against Margenat-Castro's requested downward variance, it ultimately complied with its plea-agreement obligation by recommending a sentence within the Guidelines range. Furthermore, the prosecutor stated that the government's

16

recommended sentence of 210 months was a "severe and substantial" sentence that would "send a message" and deter others from selling heroin or fentanyl.  That does not sound like "lip service" to the plea agreement, as Margenat-Castro contends.  In short, there was no breach of the plea agreement.

**AFFIRMED.**